UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
JOHN R. DURSO, JOSEPH FONTANO, NEIL
GONZALVO, FRED WREN, MICHAEL PASQUARETTA,
and DEBRA BOLLBACH, as Trustees and Fiduciaries of the
LOCAL 338 HEALTH AND WELFARE FUND,

    and

JOHN R. DURSO, JOSEPH FONTANO, NEIL
GONZALVO, DEBRA BOLLBACH, TERI NOBLE, JON
GREENFIELD, JOHN CATSIMATIDIS, ANGELO AVENA,
MORTON SLOAN and JACOB DIMANT, as Trustees and
Fiduciaries of the LOCAL 338 RETIREMENT FUND,

    and

JOHN R. DURSO, JOSEPH FONTANO, NEIL
GONZALVO, JON GREENFIELD, ANGELO AVENA
and MORTON SLOAN, as Trustees and Fiduciaries of the
LOCAL 338 BENEFITS TRUST FUND,

                       Plaintiffs,

    -against-

ALMONTE BEACH FOOD CORP.,

                       Defendant.
-------------------------------------------------------------------------X
FEUERSTEIN, J.

FILED
CLERK
2/10/2021 4:47 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**OPINION & ORDER**

17-CV-6673 (SJF)(ARL)

    Pending before the Court is the unopposed motion of plaintiffs John R. Durso ("Durso"), Joseph Fontano ("Fontano"), Neil Gonzalvo ("Gonzalvo"), Fred Wren, Michael Pasquaretta, and Debra Bollbach ("Bollbach"), as Trustees and Fiduciaries of the Local 338 Health and Welfare Fund (the "Health and Welfare Fund"); Durso, Fontano, Gonzalvo, Bollbach, Teri Noble, Jon Greenfield ("Greenfield"), John Catsimatidis, Angelo Avena ("Avena"), Morton Sloan ("Sloan") and Jacob Dimant, as Trustees and Fiduciaries of the Local 338 Retirement Fund (the

1

"Retirement Fund"); and Durso, Fontano, Gonzalvo, Greenfield, Avena and Sloan, as Trustees and Fiduciaries of the Local 338 Benefits Trust Fund (the "Benefits Fund"[1]) (collectively, "plaintiffs"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on their claims against defendant Almonte Beach Food Corp. ("defendant" or "Almonte Beach") seeking, *inter alia*, (i) to collect delinquent contributions in the total amount of eighty-six thousand seven hundred thirty-eight dollars ($86,738.00) pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, plus interest from the date of the underpayment through March 31, 2019 in the total amount of eighty-eight thousand nine dollars and forty-two cents ($88,009.42); and (ii) additional damages pursuant to Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C), in the amount of the interest charged on the unpaid contributions.[2] For the reasons set forth below, plaintiffs' motion is granted in its entirety.

---

[1] The Health and Welfare Fund, the Retirement Fund and the Benefits Fund will collectively be referred to herein as the "Funds."

[2] Plaintiffs also assert claims for attorney's fees and costs incurred in commencing this proceeding, pursuant to, *inter alia*, Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D), but do not seek summary judgment on that claim at this time. In their memorandum of law in support of their motion for summary judgment, plaintiffs indicate that they "will submit an application for attorneys' fees should this Court award them damages." (Plf. Mem. at 9).

I.      Background

    A.      Factual Background[3]

The Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002 (3), and were established pursuant to the terms of various collective bargaining agreements between Local 338 RWDSU/UFCW ("Local 338"), which is a labor organization representing employees in an industry affecting commerce, and various employers who are required to make contributions to the Funds on behalf of their employees covered by the collective bargaining agreements. (Plaintiffs' Statement Pursuant to Local Civil Rule 56.1 ["56.1 Stat."], ¶ 5)[4]. The Funds are maintained for the purpose of collecting and receiving contributions and providing various retirement, health and welfare, and other benefits to covered employees, retirees, and their dependents pursuant to and in accordance with the Agreement and Declaration of Trust of the Local 338 Retirement Fund ("Retirement Fund Trust Agreement"), the Agreement and Declaration of Trust of the Local 338 Health and Welfare Fund ("Health and

---

[3] The factual allegations are taken from the materials in the record that would be admissible in evidence, see, Fed. R. Civ. P. 56(c)(1), and plaintiffs' statement pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule 56.1"), to the extent that the assertions therein are properly supported pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. See Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).") Since defendant has not responded to the motion, the factual allegations set forth in plaintiffs' statement of material facts pursuant to Local Civil Rule 56.1 (the "56.1 Statement"), to the extent they are properly supported pursuant to Fed. R. Civ. P. 56(c), are deemed admitted. *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *Jackson v. Federal Express*, 766 F.3d 189, 194 (2d Cir. 2014) ("The non-moving party need not respond to the motion. However, a non-response runs the risk of unresponded-to statements of undisputed facts proferred [sic] by the movant being deemed admitted."); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.")

[4] Since defendant has not responded to plaintiffs' 56.1 Statement, the Court has reviewed the 56.1 Statement to "ensure that each statement of material fact is supported by record evidence sufficient to satisfy [plaintiffs'] burden of production," *Jackson*, 766 F.3d at 194, and deems the well-supported assertions therein to be admitted. Accordingly, citations to plaintiffs' 56.1 Statement indicate both that the assertions are well-supported by the record and that they are undisputed.

Welfare Fund Trust Agreement"), and the Agreement and Declaration of Trust of the Local 338 Benefits Trust Fund ("Benefits Fund Trust Agreement") (collectively, the "Trust Agreements"). (*Id.*, ¶ 7).

Plaintiffs are the Trustees of the Funds and are fiduciaries of the Funds within the meaning of Section 3(2l)(A) of ERISA, 29 U.S.C. § 1002 (2l)(A). Plaintiffs, collectively, are the "plan sponsor" within the meaning of Section 3(l6)(B)(iii) of ERISA, 29 U.S.C. § 1002(16)(B)(iii). (56.1 Stat., ¶ 5).

Defendant is a corporation that maintains its principal place of business at 663 East Park Avenue, Long Beach, New York 11561, and has employed employees covered by a collective bargaining agreement with Local 338. (56.1 Stat., ¶ 8). Defendant was a signatory to a collective bargaining agreement with Local 338 covering the period from May 10, 2012 through December 31, 2014 (the "CBA"), (*id.*, ¶ 9), pursuant to which it was required to make contributions to the Funds on behalf of bargaining unit employees in specified amounts for each month worked in employment covered by the CBA. (*Id.*, ¶ 10)[5].

The section of the CBA entitled "Definition and Coverage" states, in relevant part:

> "(a) This Agreement covers, and the term 'employee' or 'employees' as herein used includes, all of Almonte Beach's present and future full-time and part-time employees (other than store managers, butchers and meat wrappers) employed in all departments in all of the present and future supermarkets and stores operated by Almonte Beach. . . ."

(56.1 Stat., ¶ 11 [CBA, Art. 1]).

The CBA specifies that contributions to the Funds have to be paid "on or before the twentieth (20th) day of each and every month covering the amounts payable hereunder for the preceding months." (56.1 Stat., ¶ 12 [CBA, Art. 18]).

---

[5] Plaintiffs' 56.1 Statement cites to the CBA, but not to any particular provision therein. Article 18, commencing on page 16 of the CBA, pertains to the Funds.

At all relevant times, defendant was bound by the Trust Agreements, (56.1, ¶ 13)[6], which, *inter alia*, (i) authorize the Trustees to construe their provisions and the terms used therein and provide that any construction adopted by the Trustees in good faith is binding upon the signatory employer; and (ii) authorize the Trustees to bring actions to enforce an employer's obligations to make benefit fund contributions in accordance with the terms and conditions established by the Trustees. (*Id.*, ¶¶ 14-15)[7].

The Funds rely upon defendant and other employers to make the proper contributions required by collective bargaining agreements in order to provide medical, retirement, and other benefits to the Funds' participants in accordance with the rules and regulations established by the Trustees of the Funds. (56.1 Stat., ¶ 16).

The Funds sent statements to defendant during the relevant period indicating covered employees and the amount of contributions owed on behalf of said employees to the Funds (the "Statements"). (56.1 Stat., ¶ 17). As indicated on the Statements, and reflected in Article VII of the Trust Agreements, the Funds rely on employers to notify them of any new employees or existing employees not appearing on the Statements, and to indicate termination dates for employees no longer working. (*Id.*, ¶ 18). Such notifications are to accompany the monthly payments by employers. (*Id.*)

Defendant failed to make any payments to the Funds for Statements corresponding to the months of October 2012 through April 2013, August 2013 through September 2013, March 2014 through April 2014, and June 2014 through December 2014. (56.1 Stat., ¶ 19). For those same months, defendant failed to notify the Funds of any additions or corrections to the Statements

---

[6] *See* CBA and Trust Agreements, Art, II, sec. 5.

[7] *See* Trust Agreements, Art. V and VII.

5

regarding covered employees. (*Id.*, ¶ 20). During the relevant period, defendant failed to pay contributions in the amount of fifty-four thousand two hundred eighty-three dollars ($54,283.00) to the Health and Welfare Fund, in the amount of twenty-seven thousand six hundred dollars ($27,600.00) to the Retirement Fund, and in the amount of four thousand eight hundred fifty-five dollars ($4,855.00) to the Benefits Fund. (*Id.*, ¶ 21). Accordingly, the total amount of delinquent contributions defendant owes to the Funds is eighty-six thousand seven hundred thirty-eight dollars ($86,738.00). (*Id.*).

In addition to the delinquent contributions, the Trustees are entitled to interest on the contributions pursuant to the Trust Agreements and Section 502(g)(2)(B) of ERISA, 29 U.S.C. § 1132(g)(2)(B). (56.1, ¶ 22)[8]. Specifically, the Trust Agreements state that the Trustees are entitled to interest on delinquent contributions "in the amount of one and one-half percent (1 ½ %) per month of each monthly amount due for each month from the date of the underpayment to the date that it is actually paid[.]" (*Id.*) The Funds calculated that defendant owes them a total of eighty-eight thousand nine dollars and forty-two cents ($88,009.42) in interest on delinquent contributions from the date on which the contributions should have been paid through March 31, 2019[9]. (*Id.*, ¶¶ 24-26).

The Trust Agreements and Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132 (g)(2)(C), also require payment of "[a]dditional damages equal to the greater of: (1) the amount of interest charged on the unpaid contributions, or (2) liquidated damages in the form of twenty percent

---

[8] *See* Trust Agreements, Art. VII, sec. 5(a).

[9] Defendant owes interest to the Health and Welfare Fund in the amount of fifty-six thousand four hundred twenty-nine dollars and thirty-seven cents ($56,429.37); to the Retirement Fund in the amount of twenty-seven thousand three hundred thirty dollars and eighty cents ($27,330.80); and to the Benefits Fund in the amount of four thousand two hundred forty-nine dollars and twenty-five cents ($4,249.25).

(20%) of the unpaid contributions." (56.1 Stat., ¶ 27)[10]. In addition, the Trust Agreements and Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D), require an employer to pay the Trustees reasonable attorney's fees and costs incurred as a result of the employer's failure to pay contributions required pursuant to the CBA[11]. (56.1, ¶ 28).

B.   Procedural History

On November 15, 2017, plaintiffs commenced this action pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, seeking to enforce defendant's obligations under Section 515 of ERISA, 29 U.S.C. § 1145, to make contributions in accordance with the requirements of the CBA.[12] Plaintiffs seek, *inter alia*, to collect from defendant delinquent contributions for certain months during the period from October 2012 through December 2014, as well as interest, additional damages in the amount of the interest charged on the unpaid contributions and reasonable attorney's fees and costs pursuant to the terms of the Trust Agreements and Section 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(g)(2). Issue was joined by the service of an answer on behalf of defendant on February 26, 2018.

Plaintiffs now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on their claims against defendant for delinquent contributions, interest and

---

[10] *See* Trust Agreements, Art. VII, sec. 5(d).

[11] The Trust Agreements provide, in relevant part, that "[a]ttorney's fees in collection actions . . . shall be equal to the actual amount to be billed to the Trustees by their counsel for work performed in connection with this matter. …" (Trust Agreements, Art. VII, sed. 5(b)). However, Section 502(g)(2) of ERISA provides, in relevant part, that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, . . . ." 29 U.S.C. § 1132(g)(2).

[12] This case was initially assigned to the Honorable Arthur D. Spatt, former United States District Judge. The case was reassigned to the undersigned on June 30, 2020.

7

additional damages in the amount of the interest charged on the unpaid contributions. Defendant has not opposed, or otherwise responded to, the motion.

II.    Discussion[13]

    A.    Standard of Review

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *accord Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007); *see also Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added)). "A fact is material if it might affect the outcome of the suit under the governing law." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019); *see also Hancock v. County of Rensselaer*, 882 F.3d 58, 64 (2d Cir.

---

[13] Unless otherwise noted, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party.") "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. at 586, 129 S. Ct. at 2677; *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013); *accord Jaffer*, 887 F.3d at 114. "[W]hen the moving party has carried its burden[,] … its opponent must do more than simply show that there is some metaphysical doubt as to the material facts," *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012); and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.");

9

*Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"). Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"[W]here the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Jackson*, 766 F.3d at 194 (holding that a failure to respond to a motion for summary judgment "does not risk a default judgment . . . . Rule 56 [of the Federal Rules of Civil Procedure] does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion . . . is unopposed.") "An unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Vermont Teddy Bear*, 373 F.3d at 244; *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) ("Even unopposed motions for summary judgment must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law."). Thus, "in considering a motion for summary judgment, [the court] must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear*, 373 F.3d at 246.

B.      Delinquent Contributions

Section 502(a)(3) of ERISA authorizes, *inter alia*, fiduciaries, like plaintiffs, to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Trustees' claim for enforcement of defendant's contribution obligations is premised upon Section 515 of ERISA, which provides, "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see Laborers Health & Welfare Tr. Fund For N. Calif. v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 547, 108 S. Ct. 830, 98 L. Ed. 2d 936 (1988) ("The liability created by § 515 may be enforced by the trustees of a plan by bringing an action in federal district court pursuant to § 502."). The purpose of Section 515 of ERISA is "to permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law . . . [since] benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations." *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir.1990).

"In order to establish their claim under Section 515, plaintiffs must prove two elements: (1) that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the Funds and (2) that defendant failed to make such contributions." *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund,*

11

*Annuity Fund & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Dependable Office Installation LLC*, No. 14 Civ. 9502, 2017 WL 934713, at *6 (S.D.N.Y. Mar. 9, 2017), *report and recommendation adopted*, 2017 WL 1157118 (S.D.N.Y. Mar. 27, 2017); *see also Trs. of Local 813 Pension Tr. Fund v. Rizzo Env't Servs. Corp.*, No. 19 CV 6622, 2020 WL 7249289, at *3 (E.D.N.Y. Oct. 31, 2020), *report and recommendation adopted*, 2020 WL 7021595 (E.D.N.Y. Nov. 30, 2020) ("Section 1145 establishes the elements necessary to make out a claim for failure to pay contributions.") Plaintiffs, who are Trustees of employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), satisfied their burden of showing that defendant, which is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C.§ 1002(5), promised to contribute to the Funds by producing the CBA signed by defendant requiring it to make contributions to the Funds on behalf of bargaining unit employees in specified amounts for each month worked in employment covered by the CBA. *See, e.g. Benson*, 907 F.2d at 313 ("Of course, the benefit plan must prove that the employer promised to contribute to the plan in order to succeed on its claim [under Sections 502 and 515 of ERISA]. In this case, the Funds satisfied this requirement by producing collective bargaining agreements that Clifford Brower, the Secretary and Treasurer of Brower's, admittedly signed."); *Rizzo*, 2020 WL 7249289, at * 3 ("Pursuant to the CBA, Rizzo Environmental was required to remit contributions to the Funds on behalf of those employees covered by the CBA at rates set forth in the CBA."); *Dependable Office*, 2017 WL 934713, at * 6 ( "The uncontroverted evidence establishes that Dependable executed a CBA with the Union on March 15, 2011[,] . . . [which] required Dependable to make specified contributions to the Funds based on the number of hours workers spent performing work within the trade and geographical jurisdiction of the Union.")

Plaintiffs established the second element of their claim for unpaid contributions by submitting a declaration from the Fund Manager for the Funds, Ismael Torres, demonstrating, *inter alia*, that defendant failed to remit contributions to the Funds in accordance with the terms and conditions of the CBA for certain months during the period from October 2012 through December 2014 in the total amount of eighty-six thousand seven hundred thirty-eight dollars ($86,738.00). Based upon the records and other documents provided by plaintiffs, including the sworn declaration of the Fund Manager and the Statements of contributions due and owing, none of which are challenged by defendant, plaintiffs have established that defendant failed to comply with its obligation to pay delinquent contributions under the CBA and ERISA. *See, e.g. Rizzo*, 2020 WL 7249289, at *4. Accordingly, the branch of plaintiffs' motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on their claim against defendant for unpaid contributions under Sections 502 and 515 of ERISA is granted and plaintiffs are granted judgment as a matter of law awarding them unpaid contributions from defendant in the total amount of eighty-six thousand seven hundred thirty-eight dollars ($86,738.00).

    C.    Prejudgment Interest and Liquidated Damages

"The special remedy against employers who are delinquent in meeting their contractual obligations that is created by § 502(g)(2) includes a mandatory award of prejudgment interest plus liquidated damages in an amount at least equal to that interest, as well as attorney's fees and costs." *Advanced Lightweight*, 484 U.S. at 547, 108 S. Ct. 830; *see also Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*, 400 F. Supp. 3d 7, 23 (S.D.N.Y. 2019) ("In an action to recover delinquent contributions pursuant to 29 U.S.C. § 1145, an award of interest on

13

the unpaid contributions is mandatory. . . . Section 1132(g)(2) also mandates an award of liquidated damages in an amount [at least] equal to the interest on unpaid fringe benefit contributions."); *Sheet Metal Workers' Nat'l Pension Fund v. Vardaris Tech, Inc.*, No. 13 CV 5286, 2016 WL 4708214, at *2 (E.D.N.Y. Aug. 17, 2016), *report and recommendation adopted*, 2016 WL 4719684 (E.D.N.Y. Sept. 8, 2016) ("Section 1132(g) . . . creates a mandatory right to interest, liquidated damages, and attorney's fees in any case in which a judgment in favor of the plan is awarded.") Since, *inter alia*, the Trust Agreements provide that interest on delinquent contributions is to be calculated at the rate of one and one-half percent (1.5%) "per month of each monthly amount due for each month from the date of the underpayment to the date that it is actually paid," (Trust Agreements, Art. VII), and plaintiffs submitted a spreadsheet indicating the calculations the Funds used to determine the interest owed through March 31, 2019, plaintiffs are awarded interest on the delinquent contributions in the total amount of eighty-eight thousand nine dollars and forty-two cents ($88,009.42).

Section 502(g)(2) of ERISA provides, *inter alia*, that in addition to unpaid contributions, interest on the unpaid contributions, and reasonable attorney's fees and costs of the action, "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court *shall* award the plan … "(C) an amount equal to *the greater of*--(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court [for unpaid contributions]." 29 U.S.C. § 1132(g)(2) (emphasis added). Accordingly, plaintiffs are awarded additional damages in the total amount of eighty-eight thousand nine

14

dollars and forty-two cents ($88,009.42), *i.e.*, the amount of the interest charged on the unpaid contributions.

III.     Conclusion

For the reasons set forth above, plaintiffs' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted and plaintiffs are granted judgment as a matter of law on their claims against defendant for delinquent contributions, interest and additional damages in the amount of the interest charged on the unpaid contributions in their entirety. The Clerk of the Court shall (1) enter judgment in favor of plaintiff and against defendant awarding plaintiffs (a) delinquent contributions in the total amount of eighty-six thousand seven hundred thirty-eight dollars ($86,738.00) pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, plus (b) interest from the date of the underpayment through March 31, 2019 in the total amount of eighty-eight thousand nine dollars and forty-two cents ($88,009.42), and (c) additional damages pursuant to Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C), in the amount of eighty-eight thousand nine dollars and forty-two cents ($88,009.42); and (2) close this case. Plaintiffs shall serve and file an application for attorney's fees and costs incurred in commencing this proceeding, pursuant to the Trust Agreements and Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D), **by no later than February 24, 2021**, see Fed. R. Civ. P. 54(d)(2)(B)(i), or they will be deemed to have abandoned their claims against defendant for attorney's fees and costs.

SO ORDERED.                                              /s/ *Sandra J. Feuerstein*
                                                         Sandra J. Feuerstein
                                                         United States District Judge

Dated: February 10, 2021
       Central Islip, New York